**In re Scott Lenoir GWYN, individually and f/d/b/a The Idlewild Company, a Sole Proprietorship, Debtor.**

**Bankruptcy No. B–90–10249 C–11 W.**

United States Bankruptcy Court, M.D. North Carolina.

Jan. 12, 1993.

Scott Lenoir Gwyn, pro se, debtor, and Michael D. West, Bankruptcy Administrator, Greensboro, NC.

Bonnie Kay Donahue, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, for UNUM Life Ins. Co.

William L. Stocks, Nichols, Caffrey, Hill, Evans & Murrelle, Greensboro, NC, for the Unsecured Creditors' Committee.

## ORDER APPROVING REIMBURSEMENT OF ATTORNEYS' FEES AND EXPENSES TO UNUM LIFE INSURANCE COMPANY

JERRY G. TART, Bankruptcy Judge.

This matter came before the undersigned United States Bankruptcy Judge on September 17, 1992 upon the Supplemental Section 506(b) Application of UNUM Life Insurance Company for Attorneys Fees and Expenses (the "Application"), and upon the Bankruptcy Administrator's Objection to Supplemental Section 506(b) Application of UNUM Life Insurance for Attorneys' Fees and Expenses.[1]

After reviewing the entire official record and proceedings in this case and considering the arguments of the debtor, Scott Lenoir Gwyn; Michael West, the United States Bankruptcy Administrator for the

---

1. At the September 17, 1992 hearing, the court directed counsel for UNUM to prepare a proposed order awarding the supplemental fees and expenses. In December, 1992, counsel for UNUM determined that she was unable to prepare the order without further instruction from the court on the basis for the ruling. The court has, instead of providing further instruction to UNUM's counsel and to avoid further undue delay, chosen to enter this order.

Middle District of North Carolina; William Stocks, counsel for the unsecured creditors' committee; and Bonnie Kay Donahue, counsel for UNUM Life Insurance Company, and upon good cause shown, the court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. On January 25, 1990, the debtor, Scott Lenoir Gwyn (the "Debtor"), filed a voluntary petition seeking reorganization under Chapter 11 of the Bankruptcy Code.

2. The Debtor owns a 120,450–square foot commercial building located in Guilford County, North Carolina (the "AMP Property").

3. On the date that the petition was filed (the "Petition Date"), UNUM Life Insurance Company ("UNUM") was the holder of a promissory note (the "Note") made by the Debtor to UNUM in the face amount of up to $2,700,000.00. According to UNUM, the amount owing under the Note as of the Petition Date was approximately $2,670,000.00.

4. The Note is secured by, among other things, a duly recorded Deed of Trust and Security Agreement dated January 20, 1989 (the "Deed of Trust"), which conveys the AMP Property in trust for the benefit of UNUM. The Deed of Trust is a first lien against the AMP Property.

5. The Note is also secured by the AMP Property's improvements and personal property, including, but not limited to, fixtures and equipment located on the real estate, and an Assignment of Rents, Leases and Other Benefits, which grants a security interest in any and all rents, profits and other proceeds derived from the collateral.

6. The Note provides for the payment of attorneys' fees and expenses as follows: "All makers, endorsers, guarantors, and sureties hereof agree jointly and severally to pay all costs of collection and of suit and foreclosure, including reasonable attorneys' fees."

7. On June 10, 1991, the court confirmed the Debtor's Plan of Reorganization Modified and Restated as of May 22, 1991 (the "Plan").

8. Section 5.16 of the Plan provides that the Debtor is responsible "for payment of *approved* attorneys' fees and expenses of UNUM in this matter." (Emphasis added.) Thus, the Plan contains a provision that recognizes that the attorneys' fees to paid by the Debtor are subject to the court's review and approval.

9. For its showing that UNUM is an oversecured creditor for purposes of Section 506(b) of the Bankruptcy Code, UNUM has relied on the Debtor's $3,500,000.00 valuation of the AMP Property as reflected in the Debtor's Schedule of Assets and as stated in the Disclosure Statement. Therefore, it appears that UNUM has an equity cushion of at least $830,000.00 based on the value of the AMP Property. In addition, UNUM's collateral includes all rents and profits generated by the real estate collateral. According to UNUM, the present tenant of the AMP Property is obligated through December 31, 1996 to pay monthly rent payments in excess of $25,000.00. All of these rents also represent and are collateral to UNUM.

10. On or about June 24, 1991, and subsequent to the confirmation of the Plan, UNUM filed its first Section 506(b) fee application seeking recovery of attorneys' fees in the amount of $31,587.75 and expenses in the amount of $1,841.88 (a total of $33,429.63). According to the June 24, 1991 application, UNUM's attorneys billed UNUM for 230.75 hours of services performed during the period covered by that application. The bulk of the services performed by UNUM's counsel did not involve the collection of the indebtedness but entailed UNUM's efforts to resolve a dispute concerning a construction defect in the building located on the AMP Property, as well as review and negotiation concerning the Debtor's Plan. On or about December 13, 1991, the court awarded $27,841.88 to UNUM ($26,000.00 in attorneys' fees and $1,841.88 for expenses). The $27,841.88 award was a reduction of $5,587.75 from the amount requested. UNUM did not ap-

peal the court's award of Section 506(b) fees.

11. The present Application before the court requests that the court allow reimbursement to UNUM for supplemental attorneys' fees and expenses incurred by UNUM for the post-confirmation period beginning June 17, 1991 through July 10, 1992. The Application requests reimbursement for $12,270.75 in attorneys' fees paid to UNUM's counsel, plus costs and expenses in the amount of $3,038.20 (for a total of $15,308.95). UNUM has requested compensation at an hourly rate of $135.00 for partners, $95.00 for associate attorneys and $45.00 for paralegals. According to the Application, UNUM's attorneys billed UNUM for 114.65 hours of services performed during the period covered by the Application.

12. On or about September 11, 1992, the Bankruptcy Administrator filed with the court an Objection to Supplemental Section 506(b) Application of UNUM Life Insurance for Attorneys' Fees and Expenses (the "Objection"). In the Objection, the Bankruptcy Administrator noted that the services were performed and the expenses incurred by UNUM's counsel after confirmation of the Debtor's plan of reorganization on June 10, 1991 and that the majority of the time billed appeared to be for services rendered in drafting loan modification documents related to the Note. On that basis, the Bankruptcy Administrator alleged that the requested amounts did not appear to be reasonable and necessary or justified as "costs of collection" of the amounts owed under the terms of the Note pursuant to Section 506(b). In addition, the Bankruptcy Administrator alleged that certain expenses requested by UNUM were excessive and that the hourly rates were higher than the rates awarded to other attorneys representing secured creditors who had filed Section 506(b) fee applications in this case.

13. Attached as Exhibit A to the Bankruptcy Administrator's Objection was the Debtor's September 9, 1992 written objection to the UNUM fee Application in which the Debtor expressed his serious concerns that the amounts requested in the Application were not reasonable or necessary under the circumstances.

14. At the hearing on the Application, the Bankruptcy Administrator's Objection was supported by the Debtor and the counsel for the committee of unsecured creditors.

15. UNUM presented no evidence that the Debtor had not always been current in all payments to UNUM required under the loan documents or otherwise, or that any action on the part of UNUM was necessary to elicit the required payments from the Debtor.

16. Other than a minor skirmish early in the case concerning whether UNUM had a first lien position with respect to its security interest in the rents generated by the AMP Property (which was resolved early in the case), no effort was made by any party to challenge UNUM's security interest in the AMP Property or to divert funds away from UNUM.

17. UNUM is a creditor with a very secure first lien position and a large equity cushion in the collateral. There has not been any serious contention that UNUM's interest in the Note and its collateral was not fully protected at all times, and there has not been an appreciable risk to UNUM that it will not be paid in full the amount owed to it by the Debtor. Therefore, UNUM's secured claim has not been seriously threatened by the Debtor's bankruptcy.

18. According to the Application, all of the services performed and expenses incurred by UNUM during the period of time covered by the Application were performed after confirmation of the Plan. UNUM's counsel represented to the court at the hearing, however, that certain services and expenses for which reimbursement was requested were performed and incurred prior to confirmation of the plan of reorganization because of the time constraints related to the filing of the initial fee application, which was filed on June 24, 1991. The court finds that the Application and supporting documentation show that none of the services were performed prior to confirmation of the Plan.

19. The services performed and expenses incurred by UNUM were not for the purpose of collection of amounts owed by the Debtor under the terms of the relevant loan documents executed by Debtor and UNUM. By far, the vast majority of the time billed appears to be for drafting loan modification documents related to the loan that UNUM made to the Debtor—mainly transactional work involved in updating the title to the AMP Property in order to provide information to the title company.

20. In attempting to meet its burden to show that the Debtor should be responsible for reimbursing UNUM for its attorneys' fees, UNUM relies, in part, on the argument that the services rendered by its counsel were specifically directed and approved by UNUM's in-house counsel.

21. UNUM and the Debtor have agreed that fees and expenses approved by the court for the Supplemental Section 506(b) Application of UNUM Life Insurance Company for Attorneys Fees and Expenses shall be paid to UNUM at the end of the term of the UNUM's loan to the Debtor. UNUM and the Debtor have further agreed that no interest shall accrue on these supplemental fees and expenses during the interim period between the date of this order and the end of the loan.

22. Any Conclusion of Law that should more appropriately be denominated as a Finding of Fact is incorporated herein by reference.

### CONCLUSIONS OF LAW

■ 1. Fees to be awarded pursuant to Section 506(b) of the Bankruptcy Code are the proper subject of judicial scrutiny, particularly when they are in dispute. *In re Wonder Corp. of America,* 72 B.R. 580, 587 (Bankr.D.Conn.1987), *aff'd,* 82 B.R. 186 (D.Conn.1988). The court has very broad discretion in determining the amount of attorneys' fees and expenses to be awarded. *In re Kroh Bros. Dev. Corp.,* 105 B.R. 515, 520 (Bankr.W.D.Mo.1989).

■ 2. To substantiate a claim for fees pursuant to Section 506(b), the creditor must show that: (a) the creditor is oversecured; (b) the underlying agreement provides for such fees and costs; and (c) the fees and costs are reasonable. *In re Reposa,* 94 B.R. 257, 259–60 (Bankr.D.R.I.1988); *In re Mills,* 77 B.R. 413, 418 (Bankr. S.D.N.Y.1987). UNUM has the burden of proof to establish an entitlement to fees, including the burden of showing that the relevant loan documents impose an express and specific obligation on the part of the Debtor to pay the attorneys' fees and costs for which UNUM seeks reimbursement. *See Mills,* 77 B.R. at 417.

3. UNUM has satisfied one of the three requirements in that UNUM is clearly an oversecured creditor.

4. It is well settled that the court may determine whether the services rendered are within the scope of the agreement under which the claim for fees is made pursuant to Section 506(b). *In re Carey,* 8 B.R. 1000, 1004 (Bankr.S.D.Cal.1981); 3 *Collier on Bankr.,* ¶ 506.05, at 506–52 (15th ed. 1992). It is not disputed that the Note in this case contains a provision for attorneys' fees. What is disputed is whether the services performed by UNUM's counsel are covered by the provision in the Note. *See Carey,* 8 B.R. at 1004.

■ 5. Although Section 5.16 of the confirmed Plan provides that the Debtor is responsible "for payment of approved attorneys' fees and expenses of UNUM in this matter," Section 506(b) still requires that the court make a determination of whether the fees are provided for under the relevant agreement and whether the fees are reasonable and necessary.

■ 6. UNUM concedes that the fees addressed by Section 5.16 of the Plan are subject to the court's review and approval. It follows that Section 5.16 of the Plan does not attempt to divest the court of its responsibility to review fee applications filed pursuant to Section 506(b) of the Bankruptcy Code. Consequently, there is no need to decide whether an oversecured creditor could properly divest the court of responsibility under Section 506(b) by negotiating treatment in a plan of reorganization that includes an agreement to pay attorneys' fees that is broader in scope than the attor-

neys' fee provision in the underlying loan documents. Although not necessary for purposes of this order, the court believes that it would not be appropriate for a creditor to "trade peace" during the confirmation process for acquiescence by the Debtor not to dispute a request for 506(b) fees, or to agree to attempt to expand the types of attorney services reimbursable under the underlying loan documents. *See In re Wonder Corp. of America*, 96 B.R. 423, 426 (Bankr.D.Conn.1989) (citing *In re Wonder Corp. of America*, 72 B.R. 580, 588 (Bankr.D.Conn.1987), *aff'd*, 82 B.R. 186 (D.Conn.1988)); *see also In re Stanwood Devries, Inc.*, 72 B.R. 140 (Bankr.D.N.J. 1987) (it is the court's obligation to ensure the reasonableness of all fees awarded out of the estate; attorneys' fees to be charged in connection with post-petition financing remain subject to the court's review notwithstanding a contractual provision allowing the lender to charge for reasonable attorneys' fees without filing a fee application with the court).

■ 7. Section 506(b), recognizing the potential problems that may occur when the selector and user of legal services is separate from the payor of the services, imposes a limitation on the amount of contractually agreed upon fees that may be awarded to an oversecured creditor. *See In re Villa Capri Assocs. Ltd. Partnership*, 141 B.R. 257, 262 (Bankr.N.D.Ga. 1992). One purpose of Section 506(b) is to ensure that estate assets are not squandered by oversecured creditors, who, believing that the debtor will be required to foot the bills, fail to exercise restraint in the attorneys' fees and expenses they incur, perhaps exhibiting excessive caution, overzealous advocacy and hyperactive legal efforts. *See, e.g., In re Riker Indus., Inc.*, 122 B.R. 964, 973 (Bankr.N.D.Ohio 1990); *Reposa*, 94 B.R. at 261–62; *Wonder Corp.*, 72 B.R. at 591, *aff'd*, 82 B.R. 186 (D.Conn. 1988). Thus, UNUM's argument that all services were rendered at the direction, and with the approval, of UNUM's in-house counsel is not persuasive. The relevant question is not whether UNUM's counsel was acting with the appropriate authority from the client but whether the services

rendered by UNUM's counsel were included within the scope of the Note and whether they were reasonable and necessary for collection of the Note.

■ 8. The contract provision concerning the Debtor's agreement to pay UNUM's attorneys' fees must be strictly construed. *See, e.g., In re Tashjian*, 72 B.R. 968, 976 (Bankr.E.D.Pa.1987). The relevant loan document in this case entitles UNUM to collect only the "costs of collection and of suit and foreclosure, including reasonable attorneys' fees;" it does not entitle UNUM to be reimbursed for attorneys' fees incurred for any activity that UNUM chose to take in this case. *See Villa Capri*, 141 B.R. at 263. This court declines to conclude that a contract clause for attorneys' fees for collection efforts should be broadly read to include *all* services rendered in connection with the Debtor. *See In re Huhn*, 145 B.R. 872, 876 (W.D.Mich.1992) (oversecured creditor· is not entitled to compensation for every action it takes by claiming that its rights have somehow been affected); *Tashjian*, 72 B.R. at 974–75, 976 (when note limited attorneys' fees to those incurred for "collection" activities, no attorneys' fees awarded for motion for relief from automatic stay); *In re United Nesco Container Corp.*, 68 B.R. 970, 974 (Bankr.E.D.Pa. 1987) (contract clause providing for reimbursement of attorneys' fees for collection efforts should not be read broadly to include all services related to the collecting, including services performed in pursuit of creditor's claim in bankruptcy court). Although UNUM was free to pursue all legitimate actions against the Debtor in this case, UNUM is not entitled to compensation for all possible legal activity associated with the Debtor. *See, e.g., Villa Capri*, 141 B.R. at 263; *Kroh Bros.*, 105 B.R. at 521; *In re Masnorth Corp.*, 36 B.R. 335, 339 (Bankr.N.D.Ga.1984).

■ 9. The vast majority of the services rendered during the period of time covered by the supplemental Application were not necessary for the collection of the amounts owed to UNUM, particularly in

light of the large equity cushion in the collateral. *See Masnorth Corp.*, 36 B.R. at 339. It is not appropriate under Section 506(b) to allow reimbursement for compensation or expenses when the majority of the services rendered were for title work for the title insurance company and not for, or necessary for, the purpose of enforcing the Debtor's obligation and collection of amounts owed. *See In re Kroh Bros. Dev. Corp.*, 88 B.R. 997, 1003 (Bankr.W.D.Mo. 1988), *opinion after remand,* 105 B.R. 515 (Bankr.W.D.Mo.1989); *Tashjian,* 72 B.R. at 974–75, 976. Those services that were not rendered for purposes of collection are not reimbursable under Section 506(b). *See id.*

■■■■■ 10. The applicant bears the burden of proof to establish an entitlement to reimbursement for fees and expenses pursuant to Section 506(b). *See, e.g., Villa Capri* 141 B.R. at 260; *In re N.S. Garrott & Sons,* 54 B.R. 221, 222 (Bankr.E.D.Ark. 1985). For the reasons set forth above, the Applicant in this case has failed to carry that burden. The court concludes that the underlying agreement does not provide for payment of attorneys' fees for the types of services rendered by UNUM's counsel but that a flat fee will be awarded for pre-confirmation collection efforts. As a result, the court does not believe that it is necessary to consider the reasonableness of the hours or rates billed or, accordingly, the factors usually considered in determining the reasonableness of the fee application. *See Kroh Bros.,* 105 B.R. at 521–22 n. 6 (*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974) factors become relevant only after the creditor has sustained its burden of proof).

11. At the hearing, the court stated that it had originally not intended to award to UNUM any additional fees or expenses in this case. In view of the fact that counsel for UNUM represented to the court that pre-confirmation collection services were included in the fee Application, however, the court stated that it would award to UNUM additional reimbursement for the pre-confirmation collection services in the amount of $1,500.00.

12. The court has since determined that no pre-confirmation services were actually included in the Application, but will leave in place its ruling from the bench awarding $1,500.00 in supplemental fees to UNUM.

13. Any Finding of Fact that should more appropriately be denominated as a Conclusion of Law is incorporated herein by reference.

Upon the foregoing Findings of Fact and Conclusions of Law, it is therefore ORDERED that:

1. UNUM Life Insurance Company, as a secured creditor, is hereby allowed reimbursement for attorneys' fees and expenses in the additional amount of $1,500.00, with any allocation between fees and expenses to be made by UNUM Life Insurance Company;

2. UNUM Life Insurance Company shall be reimbursed by the Debtor the $1,500.00 allowed attorneys' fees and expenses at the end of the term of the loan from UNUM to the Debtor, and no interest shall accrue on these fees and expenses during the interim period between the date of this order and the end of the loan; and

3. The consent of UNUM Life Insurance Company and the Debtor, as described in paragraph 21 above, shall not be construed as an admission by either party as to any appeal of this order or as to further litigation between the parties.